# Third District Court of Appeal

## State of Florida

Opinion filed May 16, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D17-1733
Lower Tribunal No. CA-2017-001
_____

**City of Miami,**
Appellant,

vs.

**Miami Lodge #20, Fraternal Order of Police,**
Appellee.

An Appeal from the State of Florida, Public Employees Relations Commission.

Victoria Méndez, City Attorney, and Kevin R. Jones, Stephanie K. Panoff, and Forrest L. Andrews, Assistant City Attorneys, for appellant.

Buschel Gibbons, P.A., and Robert C. Buschel and Eugene G. Gibbons (Fort Lauderdale), for appellee.

Before ROTHENBERG, C.J., and SALTER and SCALES, JJ.

ROTHENBERG, C.J.

The City of Miami (the "City") appeals the corrected final order issued by

the Public Employees Relations Commission ("PERC") in favor of Miami Lodge #20, Fraternal Order of Police ("FOP"), which found that the City engaged in an unfair labor practice. We have jurisdiction under Article V, Section 4(b)(2) of the Florida Constitution and section 447.504(1), Florida Statutes (2016). For the reasons that follow, we reverse.

## BACKGROUND

This cause is again before this Court after a protracted series of reviews of the disciplinary action taken against Larry Hagan ("Hagan"), a now former City of Miami police officer, for workplace misconduct. Although, the facts regarding the alleged misconduct are not relevant to this appeal, the procedural history is.

On November 12, 2013, Hagan was suspended for 120 hours without pay and notified of his right to either: (1) appeal his suspension to the City of Miami Civil Service Board ("Civil Service Board"); **or** (2) initiate the grievance procedure outlined in the governing Collective Bargaining Agreement. Hagan elected to appeal to the Civil Service Board. Under this process, the Civil Service Board reviews the evidence and makes a recommendation to the City Manager who may sustain, reverse, or modify the Civil Service Board's findings and/or recommendations. The City Manager's determination may then be appealed to the appellate division of the circuit court, and upon a determination by the circuit court appellate panel, the parties may petition for second-tier certiorari review in this

2

Court.  See City of Miami v. Hagan, 235 So. 3d 977 (Fla. 3d DCA 2017) ("Hagan I").

**A. Hagan's election to appeal his suspension to the Civil Service Board**

Hagan elected to appeal his suspension, and on November 13, 2013, he filed a request for a hearing with the Civil Service Board.  On March 31, 2015, the Civil Service Board found Hagan guilty of most of the charges and recommended upholding Hagan's 120-hour suspension. The Civil Service Board's findings and recommendation were then submitted to the City Manager.  On April 17, 2015, the City Manager affirmed the Civil Service Board's factual findings.  However, he modified Hagan's discipline from a 120-hour suspension to a termination of employment.

After obtaining the adverse ruling by the City Manager, Hagan took two inconsistent actions: (1) on April 29, 2015, through the FOP, he filed a grievance under the Collective Bargaining Agreement; and (2) on May 21, 2015, Hagan sought review of the City Manager's determination by the circuit court appellate division.  In his petition for certiorari filed in the circuit court appellate division, Hagan argued that: (1) the City Manager abused his power by terminating Hagan, who had already been suspended for the same conduct and after he had already served the suspension; (2) the termination, in effect, resulted in "double jeopardy" because Hagan was being punished twice for the same offense; and (3) the decision

3

to terminate Hagan was made without affording Hagan due process because he allegedly was not put on notice or given an opportunity to be heard. Hagan also specifically asked the circuit court appellate panel to consider certain sections of the Collective Bargaining Agreement.

On May 31, 2016, the circuit court appellate panel overturned the City Manager's termination of Hagan based upon its conclusions that: (1) the Civil Service Board lacked jurisdiction to hear Hagan's appeal because the Civil Service Board failed to conduct a hearing within thirty days of Hagan's request for a hearing; (2) the City Manager's decision to terminate Hagan without conducting a separate hearing resulted in successive sanctions for the same offense; and (3) the City Manager's termination of Hagan resulted in cumulative and successive punishments for the same offense.

Thereafter, the City filed a second-tier petition for writ of certiorari in this Court, seeking review of the circuit court appellate panel's opinion reversing the City Manager's termination of Hagan. In his response to the City's petition for second-tier certiorari review, Hagan argued that, although he had **chosen** to appeal his suspension to the Civil Service Board **instead of** pursuing the alternative route of selecting arbitration, as authorized by the Collective Bargaining Agreement, the City Manager's termination of Hagan was improper.

On November 13, 2017, this Court granted certiorari review and quashed the

circuit court appellate panel opinion, finding that the circuit court appellate panel departed from the essential requirements of law in reversing the City Manager's termination of Hagan. Hagan I, 235 So. 3d at 977. In Hagan I, this Court examined the City's Code and the relevant case law, and concluded that it was clear that the City Manager had the authority to terminate Hagan, and that Hagan was on notice of that possibility when he elected to appeal his suspension to the Civil Service Board. Id.

## B. Hagan's Grievance

After Hagan elected to appeal his suspension to the Civil Service Board on April 17, 2015, the FOP filed a grievance on Hagan's behalf on April 29, 2015, under the Collective Bargaining Agreement. On July 1, 2015, the Director of the Department of Human Resources for the City denied Hagan's grievance based on his prior election of remedies.[1] The FOP sought to arbitrate the grievance and, on October 13, 2016, proposed an arbitrator. In response, Ms. Panoff, an Assistant City Attorney, stated:

> Our position on Hagan is that it is not arbitrable since Hagan elected his remedy pursuant to Article 6.4 of the applicable [Collective Bargaining Agreement]. Specifically, Hagan chose to appeal his suspension to the Civil Service Board. After the City Manager's termination, Hagan chose to appeal to the Circuit Court, Appellate

---

[1] The City's Director of Human Resources explained that Hagan's grievance had been denied by the City because Hagan had previously elected the remedy of appealing his suspension to the Civil Service Board, and thus, he could not pursue a grievance with the City.

Division, and the case is currently pending before the Third District Court of Appeal. Therefore, regardless of whether one argues that he elected a remedy with the Civil Service appeal or with the appellate proceeding, Hagan chose a remedy other than the grievance procedure.

Based on the City's refusal to arbitrate the grievance, the FOP filed an unfair labor practice claim against the City. The charging document alleges that "the Management Rights Article 4.1 [and Article 6.6] of the [Collective Bargaining Agreement] . . . clearly limits the City to imposing only one form of disciplinary action," and the City's refusal to advance the grievance to arbitration constitutes an unfair labor practice. On February 24, 2017, a PERC-appointed hearing officer conducted a telephonic evidentiary hearing. The hearing officer recommended that PERC issue a final order directing the City to: (1) cease and desist from unilaterally refusing to process grievances through to arbitration and similarly interfering with the exercise of any rights guaranteed under Chapter 447, Part II, Florida Statutes; (2) arbitrate Hagan's grievance; (3) pay the FOP its reasonable attorney's fees and costs; and (4) post, for sixty days, a notice to bargaining unit members advising them of the contents of PERC's order. Thereafter, PERC entered a final order adopting the hearing officer's factual findings, incorporating the hearing officer's recommended order, and sustaining the FOP's unfair labor practice claim. The City's appeal of PERC's order follows.

**ANALYSIS**

6

Our review of PERC's corrected final order is de novo. Where an agency's interpretation of law conflicts with the plain and ordinary intent of the law or where the application of a statute does not require special agency expertise, no deference need be given to the agency's interpretation. Miami-Dade Cty. v. Gov't Supervisors Ass'n of Fla., 907 So. 2d 591, 593-94 (Fla. 3d DCA 2005).

Because we find that PERC's interpretation is in conflict with the plain and clear language of section 447.401, Florida Statutes (2016), we afford PERC's interpretation no deference. Under section 447.401 and Articles 6.4, 6.6, and 6.8 of the governing Collective Bargaining Agreement, Hagan was entitled to only one remedy. Because he elected to appeal his suspension to the Civil Service Board and his subsequent termination to the circuit court appellate division, Hagan was precluded from relitigating his disciplinary action through the Collective Bargaining Agreement grievance process. We therefore conclude that PERC erred by addressing Hagan's grievance and determining that the City committed an unfair labor practice by refusing to process and arbitrate Hagan's grievance.

Section 447.401 provides career service employees with various avenues to address his or her grievances. There is nothing ambiguous about what section 447.401 provides, including its limiting language. Section 447.401 provides, in relevant part, as follows:

> A career service employee shall have the option of utilizing the civil service appeal procedure, an unfair labor practice procedure, or a

7

grievance procedure established under this section, **but such employee is precluded from availing himself or herself to more than one of these procedures.**

(emphasis added). The following Articles in the governing Collective Bargaining

Agreement are equally clear.

> **6.4**. It is further agreed by the F.O.P. that bargaining unit members covered by this Agreement **shall make an exclusive Election of Remedy** prior to filing a 2nd step grievance or initiating action for redress in any other forum. . . . The Election of Remedy form will indicate whether the aggrieved party or parties wish to utilize the Grievance Procedure contained in this Agreement **or** process the grievance, appeal or administrative action before a governmental board, agency or court proceeding. Selection of redress other than through the Grievance Procedure contained herein shall preclude the aggrieved party or parties from utilizing said Grievance Procedure for adjustment of said grievance.

> **6.6**. Only a bargaining unit member who has permanent Civil Service status as a sworn Police Officer in the Miami Police Department may appeal a suspension, demotion, or dismissal through the grievance procedure contained in this Agreement **or** in accordance with the appeal procedure of the Civil Service Rules, **but not both**. Such grievances shall be filed at Step 3 within the time limits set forth for Step 1.

> **6.8**. Grievances shall be processed in accordance with the following procedure:
> . . . .

> Step 2.

> If the grievance has not been satisfactorily resolved at Step 1,[2] the

---

[2] Step 1 under the Collective Bargaining Agreements is as follows:
The aggrieved bargaining unit member shall discuss the grievance with his immediate supervisor within seven (7) working days of the occurrence which gave rise to the grievance. The F.O.P.

8

bargaining unit member or the Employee Organization representative shall complete the Election of Remedy form provided for in Section 6.4 of this Article before initiating the grievance to the second step of the Grievance Procedure. **If the aggrieved party or parties elect the remedy other than the Grievance Procedure contained herein, the grievance shall be withdrawn for redress consistent with the Election of Remedy form. . . .**

(emphasis added).

Hagan chose to pursue a Civil Service Board review of his discipline, rather than utilizing the grievance procedure established under section 447.401 or the Collective Bargaining Agreement, and thereafter pursued an appeal to the circuit court appellant division to address the adverse Civil Service Board determination. Thus, under both section 447.401 and the Collective Bargaining Agreement, the grievance procedure under the Collective Bargaining Agreement was no longer available to Hagan or to the FOP for the purpose of addressing the disciplinary action. Consequently, the City was not required to arbitrate Hagan's grievance under the grievance procedure, and PERC erred by concluding that the City's refusal to arbitrate the grievance constituted an unfair labor practice.

Our conclusion that Hagan's election of the Civil Service Review procedure is a bar to pursuing the union grievance procedure is not only supported by section 447.401 and the Collective Bargaining Agreement, it is supported by the case law.

---

representative may be present to represent the bargaining unit member if the bargaining unit member desires him present. The immediate supervisor shall attempt to adjust the matter and/or respond to the bargaining unit member within (7) working days.

9

Florida courts have consistently applied section 447.401 to bar attempts to pursue more than one avenue of redress. See, e.g., Metro. Dade Cty. v. Dade Cty. Ass'n of Firefighters, Local 1403, 575 So. 2d 289, 290 (Fla. 3d DCA 1991) (holding that the Association of Firefighters' appeal of a firefighter's discharge through the civil service appeal procedure foreclosed any relief under the union grievance procedure); Hallandale Prof'l Firefighters, Local 2238 v. City of Hallandale, 777 So. 2d 435, 435-36 (Fla. 4th DCA 2001) (holding that, by pursuing an unfair labor practice charge with PERC, the union was barred from also seeking arbitration of the same charges); Bass v. Dep't of Transp., 516 So. 2d 972, 972 (Fla. 1st DCA 1987) (holding that PERC was required to dismiss the employee's civil service appeal because the employee had previously sought relief through a grievance procedure established by collective bargaining agreement).

Hagan contends that his union grievance action was not barred because at the time he elected to appeal to the Civil Service Board he had only been suspended, not terminated. This argument is without merit for two reasons. First, Hagan was on notice prior to his election to appeal his suspension to the Civil Service Board that the Board hearing his appeal would only have the authority to make a recommendation to the City Manager and that the City Manager had the authority to accept or modify the discipline recommended by the Board. Hagan, therefore, was on notice of the risk he was taking by appealing his suspension and

10

the preclusive effect of his election of this remedy. Second, Hagan has already litigated the same issues at every level and every forum through the administrative process he now wishes to arbitrate and litigate through the union grievance process.

A. **Hagan was on notice that his discipline could be modified when he elected the Civil Service Remedy**

The City of Miami Code of Ordinances provides, in relevant part, as follows:

**40-122. – Disciplinary actions generally.**

(a) *Authority of city manager, department director; appeals to board; investigatory, evidentiary powers of board.* Any officer or employee in the classified service may be removed, fined, laid off, or reduced in grade by the city manager or by the director of the department in which he/she is employed, for any cause which will promote the efficiency of the service; but he/she must be furnished with a written statement of the reasons therefor within five days from the date of the removal, suspension, fine, layoff, or reduction in grade, and be allowed a reasonable time for answering such reasons in writing, which shall be made a part of the records of the board; and he/she may be suspended from the date when such written statement of reason is furnished him/her. No trial or examination of witness shall be required in such case except at the discretion of the city manager or the department director.

Any employee in the classified service who deems that he/she has been suspended, removed, fined, reduced in grade or demoted without just cause may, within 15 days of such action by the department director, request in writing a hearing before the civil service board to determine the reasonableness of the action. The board shall, within 30 days after appeal of the

11

employee disciplined, proceed to hear such appeal. After hearing and considering the evidence for and against the employee, the board shall report in writing to the city manager its findings and recommendations. <u>The city manager shall then sustain, reverse, or modify the action of the department director</u>.

. . . .

**40-124. – Appeals from disciplinary actions.**

(a) *Generally.* When any employee in the classified service with permanent civil service status has been suspended, reduced in rank, or dismissed appeals to the board, the appeal must be made in writing within 15 days from the effective date of the suspension, reduction, or dismissal; and the board within 30 days shall proceed to hear such appeal. The board, recognizing the disciplinary authority of the administrative head . . . <u>shall make its findings in writing to the city manager for his/her consideration, who shall enter an order affirming, reversing, or modifying the disciplinary action of the department director</u>. . . .

(emphasis added).

This Court previously found in <u>Hagan I</u> and in a parallel opinion, <u>City of Miami v. Jean-Phillipe</u>, 232 So. 3d 1138, 1145 (Fla. 3d DCA 2017), that the City of Miami Ordinances are clear, and that following a Civil Service Board review of a disciplinary action, the City Manager will review the Civil Service Board's findings and disciplinary recommendation, and the City Manager may affirm, reverse, or modify the disciplinary recommended action. <u>Hagan I</u>, 235 So. 3d at 981-82; <u>see also</u> <u>City of Miami v. Reynolds</u>, 34 So. 3d 119, 120 (Fla. 3d DCA 2010) (concluding that "once misconduct has been determined by the Civil Service

Board, the penalty to be assessed comes within the exclusive discretion of the City Manager and may be imposed without elucidation"); Kee v. Miami-Dade Cty., 760 So. 2d 1094, 1094-95 (Fla. 3d DCA 2000) (concluding that the County Manager had complete discretion to determine the appropriate penalty where the hearing officer had decided that an offense requiring discipline had been committed, and therefore, denying the petition for writ of certiorari); City of Miami v. White, 165 So. 2d 790, 791 (Fla. 3d DCA 1964) ("It may be that the punishment imposed was severe and obviously it was more severe than would have been imposed by the Civil Service Board, but as we have pointed out, it was not the prerogative of the Civil Service Board to punish the appellant but that of the City Manager[.]").

Hagan, therefore, was on notice that, when he elected to appeal his disciplinary action to the Civil Service Board, the City Manager would ultimately determine whether to affirm, reverse, or modify the discipline recommended by the Civil Service Board. The City Manager chose the latter.

## B. **Hagan has already fully litigated his claims**

The grievance filed by the FOP on Hagan's behalf alleged that the City Manager's decision to terminate Hagan's employment: (1) violated Hagan's double jeopardy rights because Hagan was initially suspended and had already served his suspension; (2) violated Hagan's due process rights because he was not put on notice that his suspension could be modified to a termination and, had

13

Hagan known that the City Manager could terminate Hagan's employment, he would not have elected the Civil Service Board route; and (3) the City Manager lacked sufficient evidence to impose such a sanction.

The record reflects that each of these grievances have already been thoroughly litigated through the appeals following the adverse Civil Service Board disciplinary recommendation. Hagan raised these arguments in his appeal to the circuit court. He claimed that the City Manager abused his power by terminating him for the same conduct that resulted in his suspension, which he had already served; his termination constituted double jeopardy and was unsupported by competent substantial evidence; and the termination was without notice and an opportunity to be heard. Hagan specifically asked the circuit court to consider the Collective Bargaining Agreement, cited to the Collective Bargaining Agreement, and relied on it.

Thereafter, the City sought second-tier certiorari review in this Court. In his response to the City's petition, Hagan admitted that he chose to appeal his suspension to the Civil Service Board instead of pursuing an alternate remedy or selecting arbitration as authorized by the Collective Bargaining Agreement. However, he argued, as he argued below, that the City Manager abused his power, and punished him twice for the same offense, thus constituting double jeopardy and violating his due process rights. This Court concluded that the City of Miami

14

Code of Ordinances was clear; that Hagan was put on notice that he could be terminated by the City Manager, and thus, that there was no due process violation; and that his discipline was modified – he was not punished twice for the same conduct.

The FOP is therefore attempting to litigate, through the process set forth in the Collective Bargaining Agreement, the same claims Hagan has already litigated through the Civil Service Board process. The purpose of the election of remedies doctrine is to preclude this exact scenario. See Hernandez v. United Contractors Corp., 766 So. 2d 1249, 1252 (Fla. 3d DCA 2000) (recognizing that the doctrine of election of remedies "is an application of a doctrine of estoppel and provides that the one electing should not later be permitted to avail himself of an inconsistent course") (quoting Williams v. Robineau, 168 So. 644, 646 (Fla. 1936)); see also Schafer v. City of Pompano Beach v. IAFF, Local 1549, 39 F.P.E.R. ¶ 120 (2012) ("Section 447.401, Florida Statutes, raises an absolute statutory bar to re-litigating an employer's disciplinary action in an unfair labor practice case when the employee has already elected to challenge that disciplinary action in a civil service case or a grievance/arbitration.").

## Conclusion

Hagan previously elected to challenge his 120-day suspension by appealing to the Civil Service Board and then appealing that determination to the circuit court

appellate division, which ultimately led to review by this Court. Thus, the FOP's attempt to pursue the same grievances Hagan has already fully litigated and which have been decided adversely violates section 447.401, Florida Statutes, and Articles 6.4, 6.6, and 6.8 of the governing Collective Bargaining Agreement. The City, therefore, was not required to arbitrate the grievance brought by the FOP, and PERC should have dismissed the grievance rather than concluding that the City's refusal to arbitrate constituted an unfair labor practice.

We therefore reverse the final order issued by PERC, which determined that the City engaged in an unfair labor practice, and the improperly awarded fees.

Reversed.